IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | 4:15CR3091 |
| vs. | |
| SHARON A. ELDER, | FINDINGS, RECOMMENDATION, AND ORDER |
| Defendants. | |

Defendant Elder has moved to suppress any and all evidence obtained from the execution of a search warrant issued on April 23, 2015. (Filing No. 112). Elder claims the search of her business, Island Smokes, located at 1075 North 33rd Street, Lincoln, Nebraska, was not supported by probable cause and the search conducted pursuant to that warrant violated her Fourth Amendment rights. She additionally claims statements were gathered before and after her arrest in violation of her Fifth Amendment rights. For the following reasons, as to the Fourth Amendment claims, the motion to suppress should be denied. An evidentiary hearing will be held on the Fifth Amendment claims.

Fourth Amendment Claim

The challenged search of Island Smokes was conducted pursuant to a warrant. Therefore, "only that information which is found within the four corners of the [warrant] affidavit may be considered in determining the existence of probable cause." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005)(citations omitted). The relevant facts from warrant application are as follows:

a) Facts within the Warrant Application.

In April of 2015, the Lincoln Police Department was investigating the sale and distribution of products that were causing medical emergencies and/or overdoses in the Lincoln area. In mid-April of 2015, officers were dispatched to the following medical emergencies:

- A man, Mininick, was found unresponsive and in need of medical care. He later informed officers he purchased products called "Mr. Big Shot" and "Platinum" at Island Smokes.

- A woman reported her boyfriend was having an adverse effect to a "K2" product called "Mr. Big Shot." The woman said her boyfriend purchased the product at a smoke shop near 33rd and Y streets, the location of Island Smokes. She stated he smoked the product with a glass pipe. A package of "Mr. Big Shot" and an unopened package of "New Joker" were seized as evidence.

- Officers were dispatched to a medical call in which a man, Sully, was vomiting and not alert. On the scene, they found the man in a semi-conscious state, unable to communicate, and unable to stand. An opened package of "Mr. Big Shot" was found on his person along with a smoking pipe that appeared to contain "potpourri" in the bowl. Sully's companion, Baum, was similarly in need of medical attention and was taken to the hospital.

- Officers responded to the report of a male, Denney, suffering a seizure. The victim's girlfriend told officers that Denney was having a bad reaction to smoking "K2" called "No Mames" that he had purchased at Island Smokes. She provided the officers three packages of the suspected synthetic cannabinoids. They were labeled "No Mames," "Mardi Gras Premium Blend," and "Get Real."

- Officers were dispatched to a report of a woman, Handy, who had suffered a seizure and was unresponsive. The victim's son informed officers he purchased the "Black Diamond-Blueberry" product from Island Smokes for his mother and that after smoking it, she had the seizure.

- Officers were dispatched to a medical emergency involving an adult male, McCabe. He was observed lying on the ground, foaming at the mouth and behaving irrationally. Officers found the products "No Mames" and "Mardi Gras" in the pockets of his jeans. A witness reported that she accompanied the man to Island Smokes, where he bought several packages of "potpourri."

(Filing No. 114 at CM/ECF pp. 6–11). In addition, there were several other medical emergencies during this time period that involved suspected synthetic cannabinoids with the product names, or names similar to those described above.[1]

Based on the foregoing reports and investigations, LPD officers believed imitation synthetic cannabinoids were the cause of the emergencies and overdoses.[2] As identified by multiple victims or witnesses, "Island Smokes," a business owned and operated by Defendant Elder, was the source of the ingested products. (Filing No. 114 at CM/ECF pp. 6–11).

On April 18th, officers notified Island Smokes that people were experiencing negative effects from using a product labeled "Mr. Big Shot." An Island Smoke employee acknowledged that the business sold "Mr. Big Shot," but stated the product would be removed from the shelves. (Filing No. 114 at CM/ECF p. 8). In the late hours of April 21, 2015, LPD Investigator Redlin, working undercover, went to Island Smokes to identify the products being sold. Redlin asked a clerk about "Mr. Big Shot," but was told it was "outlawed." The clerk suggested Redlin purchase "No Mames" instead. Redlin purchased the No Mames, along with a smoking pipe, explaining he intended to smoke the product.

Imitation synthetic cannabinoid products are commonly sold in tobacco or head shops. They are often labeled as "potpourri" with a warning that they are not for human consumption. However, they vary greatly from the traditional dried-flower form of potpourri, and when ingested or inhaled, these imitation synthetic products can cause symptoms similar to marijuana along with more dangerous symptoms, including paranoia, panic attacks, increased heart rate and increased blood pressure. (Filing No. 114 at CM/ECF pp. 12–13).

---

[1] In addition to the medical emergencies LPD investigated, on April 18, 2015, the medical staff at one local hospital reported seeing seven people in the emergency room for medical emergencies resulting from suspected synthetic cannabinoid ingestion. (Filing No. 114 at CM/ECF p. 8).

[2] Synthetic cannabinoids are also referred to as "spice," "incense," "potpourri," or "K2."

3

Daren Reynolds, the affiant for the warrant, is a police officer for City of Lincoln and currently assigned to the Lincoln/Lancaster County Narcotics Task Force. He has received drug and narcotics training from numerous sources including the Department of Justice and the Drug Enforcement Administration. Through his law enforcement training and experience, he knows how synthetic cannabinoids are used, sold, and distributed. He assisted with investigating the medical emergencies described in the warrant application. Reynolds attested that based on his training and experience, it was evident that the products being sold by Island Smoke were being marketed and sold to be ingested, resulting in the medical emergencies described in the warrant application. It is against Nebraska law to distribute imitation controlled substances. (Filing No. 114 at CM/ECF p. 14); see also Neb. Rev. Stat. § 28-445.

b) Probable Cause

Defendant Elder claims the forgoing facts fail to establish probable cause to issue a search warrant of Island Smokes. Specifically, she alleges the warrant does not contain information regarding drug testing performed to show that the substance being sold was in fact imitation synthetic cannabinoids.

A search warrant is valid if a neutral, detached judge determined there was probable cause to believe evidence, instrumentalities, fruits of a crime, or contraband may be found in the place to be searched. Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998)(citing Warden v. Hayden, 387 U.S. 294 (1967)). Probable cause exists if, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Walden, 156 F.3d at 870 (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Judges must read applications and affidavits with common sense and not in a grudging, hyper-technical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965).

Over a period of four days, officers reported to the scene of around ten medical emergencies, all of which involved a victim who had ingested or smoked a similar product. Based upon the victims' or witnesses' description of the product's name, appearance, and packaging, the victims' symptoms, and the officers' training and experiences, there was a substantial reason to suspect the substances ingested were imitation synthetic cannabinoids. Several victims or witnesses informed officers that those products were purchased at Island Smokes. Two of the labelled products ("Mr. Big Shot" and "No Mames") were later confirmed by officers as sold by Island Smokes, with No Mames actually purchased from Island Smokes by an officer. Based on a common sense interpretation the facts presented in the affidavit, there was a high probability that officers would find evidence of the distribution of imitation synthetic cannabinoids during a search of Island Smokes. While the affidavit did not include the results of drug testing, such information is not required for finding probable cause. See United States v. Donnelly, 475 F.3d 946, 954 (8th Cir. 2007) ("Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.")

Elder also argues the affidavit lacked probable cause because the victims or witnesses who claimed to have purchased potpourri items from Elder's business were not reliable nor was their information corroborated by an independent source. Information provided by an outside source can be supplemented and its reliability corroborated by independent police investigation. United States v. Warner, 894 F.2d 957, 959 (8th Cir. 1990). In addition, separate informants reporting substantially the same information may corroborate each other. United States v. Jackson, 898 F.2d 79, 81 (8th Cir. 1990) (citing Warner, 894 F.2d at 960).

Although the government and defense counsel disagree regarding whether the victims and witnesses involved in the investigations are "informants," assuming they were, the medical emergencies investigated were separate events with separate witnesses reporting substantially the same information: Products purchased from Island Smokes were ingested and those who did so

were experiencing serious medical symptoms. Moreover, Redlin purchased "No Mames," along with a smoking pipe, at the suggestion by an Island Smokes employee and on April 18, 2015, and another officer telephonically confirmed that Island Smokes sold "Mr. Big Shot." Irrespective of whether those providing information to law enforcement are considered informants or citizen victims, their victim/witness statements were cross-corroborated, and also corroborated by the officers' independent investigation. No additional indicia of reliability was required.

    c)    <u>Leon Good Faith</u>

The government argues that even if the warrant was deficient, the evidence seized must not be suppressed under the <u>Leon</u> good-faith exception.

Under the good-faith exception to the exclusionary rule, evidence seized during the execution of a search warrant will not be suppressed if the executing officers' reliance upon the warrant was objectively reasonable. United States v. Leon 468 U.S. 897, 916 (1984). When a search is conducted pursuant to a warrant, the good-faith exception applies - unless 1) the judge issuing the warrant was misled by an affiant's false or concealed material statements; 2) the issuing judge wholly abandoned his or her judicial role; 3) the affidavit is so lacking in indicia of probable cause that official belief in its existence was entirely unreasonable; or 4) the warrant was so facially deficient that the officers could not reasonably presume it to be valid. Id. at 923.

Elder's motion argues the warrant affidavit lacked a showing of probable cause. Even assuming that is true, the executing officers obtained and reasonably relied on a warrant before searching Island Smokes. No exceptions to <u>Leon</u> have been raised, argued or shown. Therefore, under <u>Leon</u>, there is no basis for suppressing the evidence seized during the search of Island Smokes.

6

Fifth Amendment Claim

Elder seeks to suppress statements "she allegedly made," claiming her Miranda rights were violated. (Filing No. 113 at CM/ECF p. 3). Elder states she was never read her Miranda rights on August 25, 2015, and any waiver of her Miranda rights following her incarceration was not knowing and voluntary, but rather the product of an overborne will and police coercion. Elder seeks an evidentiary hearing on these Fifth Amendment claims.[3]

The government argues that absent more specific factual allegations, Elder is not entitled to an evidentiary hearing. "Evidentiary hearings need not be set as a matter of course" and the district court has discretion to make such determinations. United States v. Losing, 539 F.2d 1174, 1177 (8th Cir. 1976). To justify a hearing, the movant must allege facts that raise an issue which, if proven, would require granting the relief requested. See Id.; see also United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969).

The government claims Elder was advised of her Miranda rights and knowingly and voluntarily waived those rights. The determination of whether a defendant has knowingly and voluntarily waived her Miranda rights is "an extremely fact sensitive analysis." United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999)(emphasis added). Although Elder raises only conclusory statements that her Miranda rights were violated, the government bears the burden of proving Elder voluntarily waived those rights and provided statements. While perhaps unnecessary, the court will set an evidentiary hearing on those issues.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that as to Defendant Elder's Fourth Amendment claims (challenging the search of Island Smokes pursuant to the warrant issued on April 23, 2015; see Filing No.114), Defendant Elder's motion to suppress, (Filing No. 112), should be denied.

---

[3] This is the whole of Elder's argument regarding the alleged violation of her Miranda rights. She alleges no additional facts or information.

7

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that as to the Fifth Amendment claims raised in Defendant Elder's motion to suppress, ([Filing No. 112](#)):

1) An evidentiary hearing will be held before the undersigned magistrate judge on August 29, 2016, at 2:00 p.m. in Courtroom #2, United States Courthouse, Lincoln, Nebraska.  Two hours have been set aside for this hearing.

2) The defendant, defense counsel, and counsel for the government shall be present at this hearing.

3) Pursuant to NECrimR 12.5, copies of all exhibits expected to be offered into evidence during the hearing, except those to be used for impeachment only, shall be delivered to the chambers of the undersigned at least twenty-four (24) hours before the hearing and, at the outset of the hearing, to the extent reasonably possible, the parties shall provide the undersigned and the courtroom deputy with a written list of all witnesses the parties expect to call.

4) As to all defendants, trial of this case is continued pending the resolution of pretrial motions.

Dated this 12th day of August, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge