IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiffs,<br><br>vs.<br><br>SHARON A. ELDER<br><br>               Defendant. | 4:15CR3091<br><br>**FINDINGS AND RECOMMENDATION** |

Defendant Elder has moved to suppress statements made following her arrest on August 25, 2015. (Filing No. 112). Elder claims statements were gathered after her arrest in violation of her Fifth Amendment rights. (Filing No. 112). An evidentiary hearing was held on September 26, 2016 on Elder's Fifth Amendment claims. After considering the evidence and the parties' arguments, the court finds the motion to suppress should be denied.

STATEMENT OF FACTS

Based on the hearing testimony, and the audio and video evidence, the court finds the following facts are credible:

In early 2015, the Lincoln Police Department investigated businesses owned by defendant Sharon Elder. Based on that investigation, an indictment was filed against defendant Elder and co-defendants Jacie Sanne, Allen Peithman, AEP Properties LLC, and Cornerstone Plaza, Inc. on August 19, 2015. (Filing No. 1). The indictment charges the defendants with conspiracy to distribute various controlled substances in violation of 21 USC § 846. (Filing No. 1). Peithman and Elder, a son and mother, were further charged with conspiracy to distribute controlled substances, conspiracy to distribute misbranded drugs with intent to defraud or mislead, and conspiracy to structure among

other charges. (Id.) On August 20, 2015, search, seizure and arrest warrants were issued, including a warrant to arrest Elder.

On August 25, 2015, officers reported to Elder's residence to execute the warrants for her arrest and for the seizure of vehicles. Captain Christopher Peterson and Sergeant Reynolds with the Lincoln/Lancaster County Narcotics Task Force ("LLNTF"), Special Agent Todd Blair of the Food and Drug Administration, and Investigator Dave Hanselman with the Nebraska State Patrol were present when the warrants were executed. Sergeant Reynolds was the case manager and leader for executing the warrants, with all other officers instructed to report any relevant information or events that occurred during the execution of the warrants to Reynolds. Sergeant Reynolds wore an audio recording device throughout the execution of the arrest warrant.

To execute the arrest warrant, Reynolds and Blair knocked at the front door while Peterson secured the back of the premises. When Elder answered the door, Reynolds immediately placed her under arrest. Agent Blair read the charges from the indictment. Sergeant Reynolds then inquired about the vehicles and informed Elder that she would be allowed to gather personal items from the vehicle before it was seized. Elder informed Reynolds that she wished to change her clothes and gather things before being transported to jail. Reynolds called a female officer to assist.

Investigator Emily Noordoek arrived on the scene to escort Elder into the house to change clothes and gather items. Elder received a phone call from her son and co-defendant, Allen Peithman. Elder told her son, "The police are here. The house is being raided" and asked him to contact an attorney. Once Noordhoek realized Elder was on the telephone she asked Elder to end the call immediately: Elder complied. While in the master bedroom, Elder changed her clothes, requested to sit down, and asked for a glass

of water. Noordhoek asked if Elder wanted medical attention or an ambulance. Elder declined medical assistances. Noordhoek believed Elder was not experiencing a medical issue or impairment; that Elder was nervous and attempting to stall the process of her arrest. For the ten minutes they were together in the home, Noordhoek and Elder exchanged general conversation and nothing relevant or useful for Elder's case.

Noordhoek and Elder rejoined Sergeant Reynolds. Noordhoek reported to Reynolds that Elder had conversed with Peithman. Overhearing this exchange, Elder exclaimed to the officers "I told him to contact the attorney." Elder remained at the residence awaiting transport and clearing the vehicle of personal items.

Heather Goldy, Peithman's girlfriend, arrived at the residence. Goldy informed Reynolds that she was attempting to contact an attorney for Peithman and Elder. Goldy and Elder briefly discussed which attorney to contact. (Exh. A). Reynolds confirmed to Elder that Goldy was allowed to call an attorney.

Around 50 minutes after Reynolds arrived on the scene, Elder was prepared for transport. Reynolds informed Elder that the transport officer needed a copy of the arrest warrant Elder received. Elder responded that she wanted Reynolds to provide the documents "to my attorney." (Exh. A). Throughout the execution of the arrest warrant, Elder did not ask to have an attorney present for interrogation, no officer asked questions or made statements that would foreseeably elicit incriminating information, and Elder did not volunteer any incriminating information.

Special Agent Andy Vincik with the Department of Homeland Security interviewed Elder when she arrived at the jail.[1] Sergeant Reynolds did not pass along any

---

[1] The interview by Special Agent Vincik was recorded and transcribed. Both the video and transcription were entered into evidence and considered for this motion.

specific information to Vincik prior to the interview. Special Agent Vincik explained why he was conducting Elder's interview. Elder interrupted him several times, asking about her son and why he was included in the indictment. Vincik provided Elder her Miranda rights before beginning questioning. Vincik read the rights individually and asked Elder to stop him at any time if she didn't understand. Elder indicated that she understood her rights. Vincik further told Elder that she should inform him if she did not want to speak regarding any topic he addressed. In response, Elder stated "there is nothing I won't talk about." (Exh. C at 1:49:59). Vincik then asked Elder to sign the waiver if she was willing to talk to him: She did. Vincik then began questioning Elder.

Several times throughout the interview, Elder mentioned that she had consulted an attorney in the past to ensure the sale of her product was legal. However, she did not state that she wanted an attorney present for questioning. Elder never asked to stop the interview and did not hesitate when answering questions. At the end of the interview, Elder said she would speak with officers "anytime" and that she was willing to cooperate.

Elder now seeks to suppress any and all statements made on August 25, 2015. She argues she was not allowed to consult with an attorney in violation of her Fifth Amendment rights. She also argues her statements should be suppressed as they were involuntary and the product of an overborne will.

ANALYSIS

Elder first argues that she was not provided her Miranda rights after being arrested. Miranda warnings are required when an individual has been subjected to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in custodial surroundings." Id. at 444. Because Elder was in custody at the time she made statements, the court must

determine whether she was subjected to an interrogation without the benefit of receiving the Miranda warnings.

For the purposes of the Miranda, "interrogation" refers to "questioning initiated by law enforcement officers." Miranda, 384 U.S. at 444. This definition includes "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response" – the "functional equivalent" of questioning. Rhode Island v. Innis, 446 U.S. 291, 302-03 (1980) (emphasis in original). "Whether a particular statement constitutes an interrogation depends upon the circumstances of each case, but we generally do not find a mere factual statement to be an interrogation where it serves to inform the suspect as to the status of his case or the investigation into his activities." United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005).

Here, the officers did not question or attempt to elicit information from Elder while executing the arrest warrant. And no relevant information was revealed through the officers' conversations with Elder. At most the officers provided Elder information regarding the investigation, charges, and the seizure of vehicles. After a full review of the testimony and audio recording from the arrest, based on the credible evidence, the court finds that Elder was not interrogated prior to being interviewed by Special Agent Vincik.

Elder asserts that her Fifth Amendment rights were violated because she requested to make a call and to contact her attorney multiple times after her arrest. Elder also argues that she discussed her attorney several times throughout the interview with Special Agent Vincik.

Miranda protects a "suspect's 'desire to deal with the police only through counsel." McNeil v. Wisconsin, 501 U.S. 171, 178 (1991)(quoting Edwards v. Arizona,

451 U.S. 477, 483 (1991)). To invoke Miranda's protection, "[a] 'suspect must unambiguously request counsel,' and if she does not 'articulate [her] desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney . . . [the law] does not require that the officers stop questioning the suspect.'" Dormire v. Wilkinson, 249 F.3d 801, 804–05 (8th Cir. 2001)(quoting Davis v. United States, 512 U.S. 452, 457, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994)). Making a request to call or contact an attorney is not an unambiguous request for counsel. Dormire, 249 F.3d at 805.

Elder never requested an attorney to assist her when dealing with the police. At most, she expressed a desire to contact or have a family member or friend contact an attorney. Contrary to her current argument, when questioned by Special Agent Vincik, Elder clearly stated she wanted to cooperate with him for the interview; she waived her Miranda rights; indicated she would openly discuss any topic; and later informed Vincik that she was willing to answer questions at any time.

While Elder used the word "attorney" multiple times after her arrest and during her interview, it was never in the context of requesting to have an attorney present for questioning. The law does not require an officer to stop his interrogation whenever a defendant says the words "lawyer" or "attorney." See Davis, 512 U.S. at 459. Instead, a defendant must make an unambiguous invocation of his or her right to an attorney, indicating that he or she does not want to be questioned unless an attorney is present. Id. That did not occur in this case. While at the residence, Elder expressed her desire to call or contact an attorney and had requested her family members to do that for her: This is not an unambiguous request for an attorney. See Dormire, 249 F.3d at 805; Flamer v. Delaware, 68 F.3d 710, 725 (3d Cir. 1995)(holding defendant did not make clear statement invoking right to counsel by requesting to telephone about possible representation). During the course of her interview with Special Agent Vincik, Elder

6

referred to an attorney who advised a her in the past, but she never requested to have that attorney present.[2] The court finds that Elder did not invoke her right to counsel during her arrest or interview with Special Agent Vincik.

Elder implicitly argues Reynolds and Noordhoek violated her Fifth Amendment rights by failing to inform Special Agent Vincik that Elder had requested to contact an attorney during the arrest. As discussed above, a request to contact an attorney is not an invocation of a suspect's rights under Miranda. Further, "[a]ny statement concerning an attorney made before interrogation begins is far less likely to be a request for attorney assistance during interrogation than a similar statement made during custodial interrogation." United States v. Doe, 170 F.3d 1162, 1166 (9th Cir. 1999); Grant-Chase v. Commissioner, New Hampshire Dep't of Corrections, 145 F.3d 431, 436 n.5 (1st Cir.), cert. denied, 119 S. Ct. 361 (1998). Elder did not clearly express a desire to have counsel present for her interrogation. And even has she done so, Elder was advised of and waived her Miranda rights prior to Special Agent Vincik's custodial interrogation.

Finally, Elder argues that her statements were the product of an overborne will and were not voluntary.

To be admissible under the Fifth Amendment, a statement of the defendant must be voluntary. The test for voluntariness is whether, "in light of the totality of circumstances, pressures exerted upon the suspect have overborn his will." United States v. Jorgensen, 871 F.2d 725, 729 (1989)(quoting Haynes v. Washington, 373 U.S. 503, 513–14 (1963)). Factors the court should examine include the details of the interrogation

---

[2] During the suppression hearing, Elder implicitly argued that Special Agent Vincik failed to clarify or ask whether Elder wanted an attorney when Elder mentioned an attorney during the interrogation. While it may be "good police practice" to clarify whether a suspect wants an attorney present after an ambiguous reference is made, such conduct is not required by Miranda: An officer may continue an interrogation without asking for clarification. Davis, 512 U.S. at 461–62.

including tactics used by the officer, and characteristics of the defendant. United States v. Wilson, 787 F.2d 375, 381 (8th Cir. 1986).

Elder argues the officers used her relationship with her son to gain her cooperation. Reviewing the testimony and audio exhibits of the officers' encounters with Elder, Peithman was only mentioned in the context of the charges and investigation. Sergeant Reynolds specifically testified that based upon his previous experiences with Elder, he did not believe mentioning Elder's son would help gain cooperation. And none of the officers who had contact with Elder on the date of her arrest attempted to deceive, promise, threaten, or coerce Elder into providing information. The court finds no evidence that officers used Elder's relationship with her son to coerce her cooperation.

During her contacts law enforcement, Elder was anxious but healthy. Sergeant Reynolds and Investigator Noordhoek each asked Elder if she desired medical assistance and she denied both requests. Elder did not appear to be under the influence of alcohol or drugs, and she appeared to understand what was happening. Special Agent Vincik testified that during the interrogation Elder appeared to understand what was happening and the video of the interrogation supports this contention. (See Exh. C).

Elder has fairly significant experience with officers extending at least three years before her 2015 arrest. Her business has been subject to numerous warrants and she has consistently cooperated with officers in matters involving her business throughout her ownership. Her conduct on August 25, 2015 was no different: She acted as if she wanted to cooperate with the officers. There is no evidence of coercion.

Considering the credible evidence as a whole, the court finds Elder's statements must not be suppressed. She was advised of her Miranda rights, and she waived those

rights before being questioned. And her statements were not the product of an overborne will.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 112) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before Richard G. Kopf, Senior United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on November 28, 2016 or as soon thereafter as the case may be called, for a duration of ten (10) trial days. Jury selection will be held at the commencement of trial.

Dated this 31st day of October, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge