IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 4:15CR3091 |
| Plaintiff, ) | |
| ) | |
| vs. ) | **TENTATIVE** |
| ) | **FINDINGS** |
| SHARON A. ELDER , ) | |
| ) | |
| Defendant. ) | |

I am in receipt of the presentence investigation report in this case. There is an objection to criminal history (filing no. 395[1]) and a motion for downward departure or variance for a variety of reasons including that the offense conduct is mitigated by prior contact with law enforcement and consultation with counsel[2], that the absence of a conviction related to distribution of a controlled substance is a mitigating factor, the defendant's age (71) and health (alleged to be poor) warrant a lower sentence under USSG § 5H1.1 and otherwise. (Filing no. 396.)

Unlike NECrimR 32.1(b)(6)(C) that clearly pertains to sentencing practice but does not explicitly impose a requirement for a brief, NECrimR 12.3(b) refers to a "pretrial motion" and imposes a brief requirement for such a motion. Accordingly, because sentencing is not a pretrial matter, I will not reject Elder's motion for

---

[1] Elder's Criminal History Category of I is not altered by the conviction and due to the age of the conviction it cannot be counted. Nevertheless, if the government wants the recitation of that conviction in the PSR to stand the government will have to prove it up.

[2] To be clear, my prior ruling that Elder could not establish a defense of "public authority" or "entrapment by estoppel" stands. *United States v. Elder*, Slip. Op., 2017 WL at * 4-5 (D. Neb. February 7, 2017) (granting a motion in limine for trial). However, evidence purporting to show efforts to comply with the law are not irrelevant to sentencing. (Such an effort could also backfire, but the decision to proceed with that evidence is counsel's call and not mine.)

downward departure or variance for failure to submit a brief as suggested by the government. (Filing no. 397.) Additionally, I now give notice that I am considering a downward variance on my own motion.

IT IS ORDERED that:

(1) The undersigned will consult and follow or deviate from the Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005), and subsequent cases. In this regard, the undersigned gives notice that, unless otherwise ordered, he will (a) give the advisory Guidelines such weight as they deserve within the context of each individual case and will filter the Guidelines' general advice through § 3553(a)'s list of factors; (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury; (c) impose upon the government the burden of proof on all Guideline enhancements; (d) impose upon the defendant the burden of proof on all Guideline mitigators; (e) depart from the advisory Guidelines, if appropriate, using pre-Booker departure theory; and (f) in cases where a departure using pre-Booker departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason for doing so. I no longer give the Guidelines "substantial weight."

(2) Regarding the objection and the motion for departure or variance and my inclination to vary downward on my own motion:

      A.    Elder's objection and motion for departure or variance will be resolved at sentencing.

      B.    I herewith give notice that I am considering a variance. I will consider varying downward (for the most serious offenses of conviction carrying statutory maximums of 10 and 20 years (Counts 9, 11 and 12)) to total offense level 24 (down from total

offense level 26), resulting in a Guideline range for custodial purposes of 51 to 63 months, understanding that the defendant's criminal history category is I.[3] I am considering doing so for the following reasons.

First, the defendant was not found guilty of distributing or conspiring to distribute a controlled substance. In this case, the acquitted conduct–the synthetic drugs–drives the Guidelines for the counts of convictions imposing 10 or 20 year maximum sentences. While I am permitted, indeed required, to consider "acquitted" conduct for purposes of computing the proper Guidelines, assuming that it is relevant conduct and assuming it is proven by the greater weight of the evidence (and here the trial evidence proves both), I am still authorized to vary downward if otherwise appropriate. The extremely attentive, smart and dedicated jury members knew the law–including the concept of willful blindness–but decided against the government on the drug-distribution charges. I think I understand why. The jury was told in Instruction No. 16 (filing no. 244 and elsewhere) that: "You may not find the defendant acted 'knowingly' if you find he or she was merely negligent, careless or mistaken as to whether the potpourri contained a controlled substance." While it is unquestioned for sentencing purposes that the defendants tried to skate too close to the law and knowingly crossed the line, there is also evidence that (1) the defendants made some half-hearted effort to comply with the law (see, for example, the testimony of the attorney for the City of Lincoln) and (2) illegal synthetic drugs are a moving target, as wholesale distributors who sell these

---

[3] *See* PSR ¶ 146 for this alternative calculation.

substances to shops operated by those like the defendant try to engineer around the restrictions and publicly advertise and assert that their products are "legal."[4] These factors make the defendant's actions slightly less culpable. But, these factors standing alone would not be sufficient for me to vary. However, this is not the only reason I am considering a variance.

Second, for purposes of the Guidelines, we are dealing here with "potpourri" that included plant material. The Guidelines use a ratio of 1 to 167 where one gram of the synthetic controlled substance involved in this case is equivalent to 167 grams of marijuana. *See* U.S.S.G. § 2D1.1, Application Note 8D (Schedule of Marijuana). The basis for this ratio is not obvious, especially when one considers that one gram of hashish oil is said to have an equivalency of only 50 grams of powdered marijuana. Still further, the testimony of some of the witnesses who took this stuff did not equate it to marijuana. For a variety of reasons, at least two judges have questioned using this ratio, particularly when, as is almost always the case, plant materials are involved. Furthermore, there appears to be a debate among experts about the propriety of comparing the efficacy and potency of "potpourri" to either marijuana plants or pure THC[5] (the psychoactive ingredient in marijuana). *See*, *e.g.*, *United States v. Ramos*, 814 F.3d 910, 922-23 (8th Cir. 2016) (Bright, J., dissenting) ("Therefore, because: (1) THC [tetrahydrocannabinol] is both a controlled

---

[4] The drugs sold to Matthew Denny and Alice Handy and that caused their hospitalization for life threatening problems were new and therefore not listed as a DEA Schedule I drug.

[5] Tetrahydrocannabinol. It can be organic or synthetic.

substance and a psychoactive ingredient in other controlled substances under the Guidelines; (2) the main distinguishing factor between the THC-based controlled substances is the amount of plant material; (3) the Guidelines require consideration of all 'controlled substance[s] referenced in [the] guideline' to determine the effect an analogue has on the central nervous system; and (4) the only way to distinguish between the THC-based controlled substances is to determine the effect the plant material has on the synthetic cannabinoid concentration, I would hold the sentencing judge erred in finding the synthetic cannabinoid potpourri was most similar to pure THC. The record is devoid of any evidence regarding the effect the synthetic cannabinoid potpourri had on the central nervous system and, in the absence of that evidence, there was no record to support the sentencing judge's application of the 1:167 ratio."); *United States v. Hossain*, No. 15-cr-14034-MIDDLEBROOKS, 2016 WL 70583, at *7 (S.D. Fla. Jan. 5, 2016) (varying downward and stating: "Although THC is the closest controlled substance to XLR-11 that is currently referenced in the Guidelines, I do not find the Guidelines range for THC particularly helpful in calculating Hossain's sentence. The Guidelines Range yields a sentence that is 'greater than necessary' to achieve § 3553(a)'s purpose. I am dissuaded from sentencing Hossain within the Guideline range because not one expert could provide any scientific basis for the 1:167 ratio for comparing marijuana to THC [tetrahydrocannabinol].") *See also* Gershel, Brad, *Sentencing Synthetic Cannabinoid Offenders: 'No Cognizable Basis'* (May 13, 2017) found in the American Criminal Law Review Online, Vol. 54 (2017) and available at SSRN: https://ssrn.com/abstract =2971025 ("Given the Ratio's lack of scientific and empirical

4:15-cr-03091-SMB-JMD  Doc # 400  Filed: 07/19/17  Page 6 of 6 - Page ID # 4275

support, it is disconcerting that the government advocates so strongly for its application. In the first instance, however, it is far from settled whether [smokable synthetic cannabinoids] is fairly classified as *pure* THC."). So as not to be misunderstood, this stuff is very dangerous. Indeed, the defendant is responsible for putting a lot of people in the hospital. However, one might also ask, if only rhetorically: Are smokeable synthetic cannabinoids 167 times more dangerous than smokable marijuana?

(3)     Except to the extent (if at all) that I have sustained an objection or granted a motion or reserved an issue for later resolution in the preceding paragraph, the parties are herewith notified that my tentative findings are that the presentence report is correct in all respects.

(4)     Any challenges to these tentative findings may be made orally at sentencing and shall be resolved at that time.

July 19, 2017.

> BY THE COURT:
> *s/ Richard G. Kopf*
> Senior United States District Judge